UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| vs. | ) | No. 12 CR 970 |
| | ) | Judge James B. Zagel |
| TIMOTHY HILLIARD | ) | |

**DEFENDANT'S RULE 29(a) MOTION FOR
JUDGMENT OF ACQUITTAL**

Defendant, TIMOTHY HILLIARD, by his attorney, JERRY BISCHOFF, moves for judgment of acquittal at the close of the Government's evidence, pursuant to Rule 29(a) of the Federal Rules of Criminal Procedure, for counts One through Seven, and Count Nine of knowingly and intentionally distributing a controlled substance in violation of 21 U.S.C § 841(a)(1), one count Eight of knowingly possessing a firearm in violation of 18 U.S.C. § 924(c)(1)(A), on the grounds that the evidence as to those counts is insufficient to sustain a conviction.

Rule 29(c) provides that after the government closes its evidence, the court, on a defendant's motion, must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction. The evidence at the close of the government's case, taken in the light most favorable to the government, has failed to establish guilt beyond a reasonable doubt. Specifically, the government failed to prove that defendant Hilliard was not entrapped.

Once the entrapment defense has been properly raised, the burden shifts to the government to prove beyond a reasonable doubt that the defendant has not been entrapped. In *United States v. Mayfield,* ___ F.3d ___, 2014 WL 5861628 (7th Cir. Nov. 13, 2014) the Court stated: "We have consistently held that the government can defeat the entrapment defense at trial by proving *either* that the defendant was predisposed to commit the crime or that there was no government inducement. *See, e.g., Santiago-Godinez*, 12 F.3d at 728; *Gunter*, 741 F.2d at 153 (explaining that the prosecution must "prove beyond a reasonable doubt that the defendant was predisposed or that there was no government inducement" (emphasis added)). At trial, the government did not meet its burden as to either prong.

**PREDISPOSITION**

A defendant is predisposed to commit the charged crime if he was ready and willing to do so and likely would have committed it without the government's intervention, or actively wanted to but hadn't yet found the means. The defendant's predisposition is measured at the time the government first proposed the crime, but the nature and degree of the government's inducement and the defendant's responses to it are relevant to the determination of predisposition. *United States v. Mayfield,* ___ F.3d ___, 2014 WL 5861628 (7th Cir. Nov. 13, 2014).

The government introduced two drug convictions which occurred more than 10 years before the crime in question which the court allowed over defendant's objection. But, this fell far short of demonstrating that Mr. Hilliard was predisposed a decade later in 2012 when the government informant, Henry Romano, first began to harass him. At trial there was no evidence that Mr. Hilliard sold drugs to anyone but the government.[1] Furthermore, Mr. Hilliard had never sold guns or traded guns with anyone before. He never raised the idea of trading drugs for guns. It was entirely the government's idea through its informant. Ironically, the one gun in Mr. Hilliard's possession was given to him by Romano years earlier. Romano had also given him ammunition at that time. This was uncontroverted. In fact, Romano had lied about it to the agents in early March of 2012 when he was first debriefed about Mr. Hilliard by omitting to tell them that he had given Hilliard this gun.

The *Mayfield* case emphasizes that predisposition is to be measured at the time the government first proposed the crime. However, in this case the government intentionally muddied the waters as to when the crime was first proposed. By doing so, the government made it impossible for the jury to measure Mr. Hilliard's predisposition. The direct testimony of Agent Labno left the jury with the impression that the first contact between Mr. Hilliard and Romano was March 19, 2012, the date of the first recorded phone call. But this completely ignored the uncontroverted testimony of Mr. Hilliard that the government informant had been applying constant pressure on him to sell drugs for months. In fact, Romano first began to pressure Hilliard to sell him drugs as far back as 2008, not long after he became a government informant. For five years, Mr. Hilliard was working full time, supporting his family. During this time he had

---

[1] At trial, when asked whether there was any evidence that Mr. Hilliard sold drugs to anyone other than himself and Romano, Agent Labno answered yes. This prompted a Motion for a Mistrial. Subsequent cross-examination revealed that Agent Labno was attempting to give his opinion.

always declined Romano's attempts at persuasion. However, in the fall of 2011, Romano stepped up the pressure and he began to constantly approach Hilliard for drugs. The defendant introduced phone records corroborating the fact that contact had occurred at least as early as the beginning of January of 2012. Ironically, those same phone records were subpoenaed by the government shortly before trial and the agents admitted that prior to seeing the records they did not even know of the contact between Hilliard and Romano throughout January and February of 2012. In fact, the government never rebutted Mr. Hilliard's testimony regarding when their informant first proposed the crime. They never called the informant to the witness stand. The only evidence as to Mr. Hilliard's predisposition at the time the crime was first proposed came from Mr. Hilliard who stated unequivocally that he would not have sold drugs or traded guns for drugs but for the constant pressure exerted upon him by Romano.

      Rather than submit evidence that Timothy Hilliard was predisposed to commit the charged crime, the government instead directed their efforts at trial toward sidestepping the evidence that their informant was constantly pressuring Hilliard. There was extensive evidence that Romano was repeatedly approaching Hilliard. In addition, it was clear that Agent Labno was not monitoring most of the contact between Mr. Hilliard and Romano. However, every time Mr. Hilliard demonstrated that the government informant was having unmonitored contact with him, Agent Labno's response was to testify that it didn't happen. Agent Labno was clearly prevaricating when asked about the multiple contacts between his informant, Henry Romano, and the defendant, Timothy Hilliard. Even when there were instances on tape where the informant and the defendant referenced having unmonitored contact, Agent Labno would insist it didn't happen. For example, on April 5, 2012, Romano states to Hilliard, "I'm gonna hit you up on Saturday." During the May 22, 2012 conversation at Bar Louie Romano states to Hilliard, "I was hurtin after all the other day when we hit it." Later on, Romano invites Hilliard to go swimming with him at Lifetime. During the July 25, 2012 conversation Romano invites Hilliard to go to the casino. On September 18, 2012, Hilliard tells Agent Labno to give the money to Romano stating, "I see him (Romano) all the time." On October 11, 2012, Romano invites Hilliard to go downtown with him and his girl to which Hilliard agrees. Each time, Agent Labno would state the contacts did not occur.

      Agent Labno's testimony was that there was either no unmonitored contact between Mr. Hilliard and Romano or alternatively that, even if there was, nothing was discussed about the

crime during these contacts. However, when pressed, he admitted that he did not know for a fact if they discussed the crime, which suggests that Labno was providing his opinion. In essence, he opined that if it had happened Romano would have told him. This was significant because Mr. Hilliard's defense was that he was not selling drugs at the time he was first approached by government agents; that he was not "ready and willing to do so," would not likely "have committed it without the government's intervention," and that he did not "actively want to." Agent Labno was savvy enough to understand that the multiple meetings between Mr. Hilliard and his informant to which he was not privy were evidence of inducement. He responded by offering unsolicited opinions as to whether the contacts took place and opined that if they did, nothing of import was discussed. Agent Labno's unsolicited opinions were not evidence and should not have been permitted.[2] The government did not prove beyond a reasonable doubt that Mr. Hilliard was predisposed to commit the charged offenses.

## INDUCEMENT

The government also failed to prove beyond a reasonable doubt the Mr. Hilliard was not induced to sell heroin to them and ultimately to trade heroin for guns. Inducement means government solicitation of the crime plus some other government conduct that creates a risk that a person who would not commit the crime if left to his own devices will do so in response to the government's efforts. The "other conduct" may be repeated attempts at persuasion, fraudulent representations, threats, coercive tactics, harassment, promises of reward beyond that inherent in the customary execution of the crime, pleas based on need, sympathy, or friendship, or any other conduct by government agents that creates a risk that a person who otherwise would not commit the crime if left alone will do so in response to the government's efforts. *United States v. Mayfield,* ___ F.3d ___, 2014 WL 5861628 (7th Cir. Nov. 13, 2014).

"Inducement" can be shown without establishing that the defendant acted out of duress or was coerced: "While coercion is sufficient to establish inducement, it is not necessary. *See United States v. Pillado*, 656 F.3d 754, 764 (7th Cir. 2011) (entrapment defense not defeated where defendant "could have walked away" and was not "forced" to participate).

Mr. Hilliard testified in detail that Romano repeatedly attempted to persuade and harass him well before the first sale of heroin. He testified that Romano repeatedly made pleas based on

---

[2] At trial, counsel objected at sidebar, stated that this testimony had not been disclosed to him and moved for a mistrial. Agent Labno's unsolicited opinions are discussed at length in Mr. Hilliard's Motion for New Trial.

friendship, sympathy and by constantly pointing out Mr. Hilliard's own deteriorating financial situation. The testimony was corroborated by phone records and by the multiple unmonitored contacts referenced in the video and audiotapes between Mr. Hilliard and Romano. Moreover, their close friendship of 14 years was undisputed. Mr. Hilliard testified that the persuasion began in 2008 shortly after Romano became a government informant. In essence, he resisted Romano's efforts to entrap him for five years. The government did not rebut this testimony. Instead, Agent Labno provided his unsolicited opinions that the contacts did not take place testifying that he believed Romano would have told him if they had. In the alternative, he gave his unsolicited opinion that even if the contacts had taken place, nothing about the case was discussed because Romano would have told him.

The government failed to prove beyond a reasonable doubt that Mr. Hilliard was not induced.

## CONCLUSION

During their case in chief the government offered little if any evidence which would prove beyond a reasonable doubt that Mr. Hilliard was not entrapped. Mr. Hilliard then took the stand and explained away each and every inference that the government could possibly draw about his predisposition and whether or not he was induced. Mr. Hilliard detailed the months and years of pressure brought to bear upon him by the government informant. The government did not rebut this testimony. In fact, the only person who could have rebutted it was Henry Romano. The government chose not to call him. Instead, Agent Labno offered unsolicited opinions that there was no inducement in spite of the overwhelming evidence of repeated contacts between the informant and Mr. Hilliard long before the government first began to record Mr. Hilliard. This was a closely balanced case. The jury was unable to reach a verdict as to the first sale set out in Count One. They eventually did reach a guilty verdict as to the other counts but only after four days of deliberation. The government did not meet his burden. Wherefore, Mr. Hilliard requests that this Court grant his Motion for Judgment of Acquittal pursuant to Rule 29.

Respectfully submitted,

s/ Jerry Bischoff ,
**JERRY BISCHOFF**, Attorney
for Defendant.

**JERRY BISCHOFF**
Attorney for TIMOTHY HILLIARD
35 East Wacker Drive, Suite 650
Chicago, Illinois 60601
(312) 853-2167

## **CERTIFICATE OF SERVICE**

      I hereby certify that foregoing Defendant TIMOTHY HILLIARD's **MOTION FOR RULE 29(a) JUDGMENT OF ACQUITTAL** was served on December 30, 2014, in accordance with Fed.R.Crim.P.49, Fed.R.Civ.P.5, LR 5.5, and the General Order on Electronic Case Filing (ECF) pursuant to the district court's system as to ECF filers.

                                              **S:/**     **Jerry Bischoff**,
                                                          **JERRY BISCHOFF**
                                                          35 East Wacker Drive, Suite 650
                                                          Chicago, Illinois 60601
                                                          (312) 853-2167