UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| vs. | ) | No. 12 CR 970 |
| | ) | Judge James B. Zagel |
| TIMOTHY HILLIARD | ) | |

## MOTION FOR NEW TRIAL

NOW COMES the Defendant, TIMOTHY HILLIARD, by and through his attorney, Jerry Bischoff, pursuant to Federal Rule of Criminal Procedure 33, does hereby respectfully request that this honorable Court grant Defendant a new trial. Following a four day trial followed by four days of deliberation, Defendant was convicted of seven counts of knowingly and intentionally distributing a controlled substance in violation of 21 U.S.C § 841(a)(1), one count of knowingly possessing a firearm in violation of 18 U.S.C. § 924(c)(1)(A) and one count of possession of a firearm by a felon in violation of 18 U.S.C. § 922(g). Defendant moves for the grant of a new trial in that he was denied a fair trial due to various errors which individually and collectively denied him his constitutional right to a fair trial. *United States v. Santos*, 201 F.3d 953, 965 (7th Cir. 2000). The issues are set forth below.

### AGENT LABNO'S DUAL CAPACITY TESTIMONY

During cross-examination of Agent Labno, he responded to several questions by providing opinions. The questions did not call for Agent Labno's opinions. Often, the opinions were disguised as fact. For example, when defense counsel asked whether Agent Labno had any other evidence that Mr. Hilliard had sold heroin to anyone other than government agents, Agent Labno said yes. Based on the discovery that had been tendered defense counsel knew this was not the case. Counsel immediately requested a sidebar and asked for a mistrial based on the government's failure to disclose this evidence pre-trial. At sidebar, the government took the position that the alleged sale was documented in stipulation number 15. Stipulation 15 reads as follows:

On September 18, 2012, agents and task force officers of the ATF made the following observations during surveillance:

- At approximately 5:30 p.m., defendant TIMOTHY HILLIARD left his residence located at 1118 ½

- Elmwood, Evanston, Illinois, driving a 1994 Buick sedan bearing Illinois license plate H846184. Defendant drove through Evanston and into Skokie, Illinois.
- At approximately 6:30 p.m., defendant TIMOTHY HILLIARD was parked in his Buick in the area of 8025 Keating Avenue, Skokie, Illinois, and talking on his cell phone.
- A short time later, defendant TIMOTHY HILLIARD's Buick was parked in a lot behind the building at 8025 Keating Avenue, Skokie, Illinois.
- Defendant TIMOTHY HILLIARD then left the Skokie address, drove through Evanston, and entered the parking garage located at 1618 Sherman Avenue, Evanston, Illinois.
- At approximately 6:51 p.m., the CI and the UC entered the same parking garage, and parked near defendant's Buick.
- At approximately 7:04 p.m., defendant TIMOTHY HILLIARD exited the parking garage, drove to his residence, and entered his residence. The CI and the UC also exited the parking garage, and left the area.

Clearly, there was nothing about any other drug deals contained within the body of this stipulation nor in any other stipulation. However, Agent Labno's testimony about other drug deals was rooted in these bare boned facts. In fact, Agent Labno was giving his unsolicited opinion that this was a drug deal between Hilliard and someone other than the government. Agent Labno's opinion that the above stipulation may have involved a drug deal should have been disclosed prior to trial. More likely than not, Agent Labno was simply attempting to disguise his opinion as fact testimony. The court reserved its ruling on defendant's motion for a mistrial. Defense counsel then further cross-examined Agent Labno and it quickly became apparent that Agent Labno had, in fact, provided his unsolicited opinion that based on his experience as an ATF agent that he believed Mr. Hilliard was selling drugs to someone else on this occasion. In essence, he was testifying in a dual capacity.

In *United States v. Christian,*,673 F.3d 702 (7th Cir. 2012) the Court stated that "when a witness testifies in a dual capacity, the district court must take precautions to minimize prejudice to the defendant. The witness's dual role might confuse the jury, or a jury might be smitten by an expert's aura of special reliability and therefore give his factual testimony undue weight. Experts famously possess an aura of special reliability surrounding their testimony. And it is possible that the glow from this halo may extend to an expert witness's fact testimony as well, swaying the jury by virtue of his perceived expertise rather than the logical force of his testimony. Or, the

jury may unduly credit the opinion testimony of an investigating officer based on a perception that the expert was privy to facts about the defendant not presented at trial. Alternatively, the mixture of fact and expert testimony could, under some circumstances, come close to an expert commenting on the ultimate issue in a criminal matter." The court stated further: "In light of the dangers of witnesses testifying in a dual capacity, district courts must take some precautions to ensure the jury understands its function in evaluating this evidence. The jury needs to know when an agent is testifying as an expert and when he is testifying as a fact witness. The dual testimony situation places an especially heavy burden on the district court to ensure that the jury understood its function in evaluating the evidence, particularly where the conduct at question may appear innocent. To take the necessary precautions, the court can give an appropriate cautionary instruction and require examination of the witness in such a way as to make clear when the witness is testifying to fact and when he is offering his opinion as an expert." *United States v. Christian,*, 673 F.3d 702 (7th Cir. 2012).

On cross-examination, Agent Labno offered what turned out to be his opinions on several other occasions, disguised as fact testimony. This happened when defense counsel questioned him about unmonitored contacts between Mr. Hilliard and Romano. His testimony that they did not discuss heroin or gun transactions on those occasions or that the meetings didn't even occur turned out to be based on his opinions, not his knowledge of the facts. His testimony regarding sales of heroin to persons other than himself or Romano was also in the end, his opinion. On cross-examination, he was never asked for his opinion. He was never qualified as an expert. On multiple occasions, defense counsel advised Agent Labno that he wanted him to provide only fact based answers to his questions, not opinions. Ultimately, Agent Labno's dual role confused the jury. The jury may have concluded that his opinions contained special reliability and given them undue weight. This was especially prejudicial where the defense was entrapment and one of the issues was whether Mr. Hilliard was ready, willing and able to sell drugs at the time the government first approached him – whether he was predisposed. Agent Labno's unsolicited opinions that Mr. Hilliard was selling to other people besides the government presented a risk of confusing the jury into believing that he was privy to facts about Mr. Hilliard which weren't presented during the trial. Moreover, his opinions that Romano and Mr. Hilliard either did not have unmonitored contact or if they did, nothing was discussed about the drug and gun

transactions were calculated to undermine the issue of inducement. Where the evidence was closely balanced, this was clearly error.

## MISTRIAL

"A mistrial should be granted if the defendant's substantial rights are prejudicially affected. This occurs when there is a reasonable probability that, but for the alleged error, the outcome of the trial would have been different." *United States v. Newsome,* 475 F.3d 1221, 1227 (11th Cir. 2007).

The Court erred by not granting defendant's Motion for a Mistrial based on Agent Labno's testimony regarding his opinion that Timothy Hilliard sold heroin to someone other than the government or its informant on September 18, 2012. His opinion should have been disclosed prior to trial pursuant 404(b)(2)(A). However, the government never disclosed this evidence or opinion tending to indicate that said sale may have taken place. Had defense counsel known that Agent Labno held any opinions whatsoever regarding the facts stipulated to in Government Stipulation 15, counsel would have significantly altered his strategy as to cross-examination or even whether he would have entered into the stipulation. Agent Labno's opinion had a significant impact on the jury. He opined that Mr. Hilliard was selling heroin to other person's besides the government which suggested that Mr. Hilliard was well ensconced in the drug trade. It impacted on the on whether or not there was government inducement. Moreover, it suggested Mr. Hilliard was predisposed.

## PRIOR CONVICTIONS

The Court erred when it admitted two of Mr. Hilliard's prior convictions, one of which was more than 10 years old. Under most circumstances, Rule 404(b) controls. Evidence of crimes, wrongs, or other acts is not admissible, unless it is offered for some purpose other than character or propensity evidence. *FRE 404(b).* Here, the convictions were offered on the issue of predisposition as a result of defendant's entrapment defense. However, even if offered for a legitimate purpose, the evidence may still be inadmissible if its probative value is outweighed by certain other factors. *FRE 403*; *United States v. Whitlow*, 381 F.3d 679, 686 (7th Cir. 2004). In applying Rule 404(b), the Seventh Circuit has outlined four requirements for district courts to use in determining admissibility of the proffered evidence. *Id*. The evidence must (1) be directed toward establishing a material issue other than propensity, (2) be similar enough and close enough in time to be relevant to a material issue, (3) be sufficient to support a jury finding that

the defendant committed the act, and (4) have probative value that is not substantially outweighed by the danger of unfair prejudice. *Id*. In this case the two prior convictions were simply too remote to be offered as evidence of predisposition.

The first conviction for delivery of cocaine was from 1997. It occurred 15 years prior to the charged offense. The second conviction was for simple possession from 2002, ten years before the charged offense. It is true that 404(b) contains no fixed temporal requirement. However, courts apply a reasonableness standard that examines the facts and circumstances of each case. *United States v. Halk,* 634 F.3d 482, 487-88 (8th Cir. 2011). In *United States v. Mayfield*, 2014 U.S.App. LEXIS 21525 at 53, the Court, citing *United States v. Sherman,* 356 U.S. 369, 373-377 (1958) held that the timing of a defendant's prior convictions should be considered as it relates to predisposition. In fact, *Sherman* held that a defendant's prior drug crimes, which were 9 and 5 years old, were insufficient as a matter of law to establish his predisposition to sell drugs. Mr. Hilliard's convictions are significantly older than that. They simply shed no light on whether defendant was predisposed in 2012. As a result, they should not have been admitted.

## JURY INSTRUCTIONS

Mr. Hilliard objected to several of the government's jury instructions at trial and he renews those objections. Mr. Hilliard also filed an Objection to the Government's Proposed Jury Instructions (R. 75) which he incorporates into this Motion for New Trial. In particular, Mr. Hilliard maintains that it was error to provide the jury with Government Instruction 41. Mr. Hilliard argued that Government Instruction 41 proposed taking a step back in time to before the 2012 Federal Pattern Criminal Instructions were adopted, proposing a five factor list first adopted in 1983. However, *Mayfield* does not endorse this list and, in fact, regards it as "cryptic when unattached to a substantive legal standard, as this one is." *Mayfield* at p. 36. The *Mayfield* court added, "Without a legal definition of predisposition, jurors are left to weigh the listed factors in the abstract, or perhaps weigh them against an intuitive understanding of the term." *Mayfield* at p. 36. Had the *Mayfield* court believed that pattern instruction 6.05 was improper the court would have said it. Government Instruction No. 41 elevates a defendant's reluctance above any of the other factors stating "the most significant factor you should consider is whether the defendant was reluctant to commit the offense." The problem with this instruction is that the first, and maybe the only question the jury asked, was Mr. Hilliard sufficiently reluctant? Is a

little reluctance enough or is something more required? No definition of reluctance was provided. By elevating this factor above all of the others there was inevitable confusion. In *United States v. Pillado*, 656 F.3d 754, 764 (7th Cir. 2011) the court held that the entrapment defense was not defeated where defendant "could have walked away" and was not "forced" to participate. In other words, *Pillado* stresses that where there was almost no reluctance at all a defendant may still be entrapped. Even the 1999 Instructions provided greater clarification than the instruction provided here, stating: "While no single factor necessarily indicates by itself that a defendant was or was not entrapped, the central question is whether the defendant showed reluctance to engage in criminal activity that was overcome by inducement or persuasion." Government Instruction 41 drops the language "that was overcome by inducement or persuasion" simply stating that reluctance is the most significant factor. Significantly, in the 2012 Pattern Instruction 6.05 the committee eliminated that language altogether setting forth a non-inclusive list of eight factors rather than five stating: "It is up to you to determine the weight to be given to any of these factors and any others that you consider." *Mayfield* provides absolutely no reason for rejecting the 2012 Federal Pattern Criminal Instruction 6.05 so long as it is coupled with a definition of predisposition stating: "Our multifactor test for predisposition would be more useful if we defined the term."[1] P. 36. Importantly, nowhere in *Mayfield* does the court reject Pattern Instruction 6.05.

*United States v. Mayfield*, U.S. App. LEXIS at p. 54 (7th Cir. 2014) did not reject Pattern Instruction 6.05. It merely ruled that a definition of predisposition was required. It is defendant's position that Government Instruction 41 placed undue weight on the factor of reluctance thereby confusing the jury.

## CONCLUSION

For the foregoing reasons, defendant, TIMOTHY HILLIARD, requests that this Honorable Court grant his Motion for a New Trial pursuant to Rule 33.

Respectfully submitted,

s/ Jerry Bischoff                         ,
**JERRY BISCHOFF**, Attorney
for Defendant.

---

[1] The *Mayfield* court appears to be referencing the existing instruction 6.05.

**JERRY BISCHOFF**
Attorney for TIMOTHY HILLIARD
35 East Wacker Drive, Suite 650
Chicago, Illinois 60601
(312) 853-2167

## CERTIFICATE OF SERVICE

      I hereby certify that foregoing Defendant TIMOTHY HILLIARD's **MOTION FOR NEW TRIAL PURSUANT TO RULE 33** was served on December 30, 2014, in accordance with Fed.R.Crim.P.49, Fed.R.Civ.P.5, LR 5.5, and the General Order on Electronic Case Filing (ECF) pursuant to the district court's system as to ECF filers.

                                                      **S:/**   **Jerry Bischoff** ,
                                                           **JERRY BISCHOFF**
                                                           35 East Wacker Drive, Suite 650
                                                           Chicago, Illinois 60601
                                                           (312) 853-2167